## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| J. LINCOLN TAMAYO and MARIA T. TAMAYO, <br><br> Plaintiffs, <br><br> v. <br><br> SOUTHWEST AIRLINES COMPANY and GMD AIRLINE SERVICES, INC., <br><br> Defendants. | CIVIL NO.: 17-2129 (MEL) |

**OPINION AND ORDER**

J. Lincoln Tamayo and Maria T. Tamayo ("Plaintiffs") filed a complaint against Southwest Airlines Company, GMD Airlines Services, Inc., and various unidentified insurance companies ("Defendants") on August 23, 2017.[1] ECF No. 1. Plaintiffs alleged negligence by Southwest Airlines Company ("Southwest") and by GMD Airlines Services, Inc. ("GMD"). Id. at 3–4. Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that the damages suffered by Plaintiffs are minor and do not exceed the $75,000 threshold necessary for the existence of diversity of citizenship jurisdiction. ECF No. 40. On January 28, 2019, the court entered an order denying Defendants' motion to dismiss. ECF No. 43. Pending before the court is Defendants' motion for reconsideration. ECF No. 44. Plaintiffs filed a response in opposition, which they supplemented pursuant to a court order. ECF Nos. 45–47. Defendants filed a reply to the response in opposition. ECF No. 48.

---

[1] The claims against all generically named defendants have been dismissed. ECF No. 35.

## I. MOTION TO DISMISS STANDARD UNDER RULE 12(b)(1)

Pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)"), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "As courts of limited jurisdiction, federal courts have the duty to construe their jurisdictional grants narrowly." Fina Air, Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008) (citing Alicea Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998)). Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. See Murphy v. United States, 45 F. 3d 520, 522 (1st Cir. 1995); Droz-Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217 (D.P.R. 2003).

Challenges to subject matter jurisdiction through a Rule 12(b)(1) motion may constitute either a facial or factual challenge. Valentín v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001); Mercado Arocho v. United States, 455 F. Supp. 2d 15, 18 (D.P.R. 2006); Rivera de León v. Maxon Engineering Servs., Inc., 283 F. Supp. 2d 550, 554 (D.P.R. 2003). To decide whether a 12(b)(1) motion is a facial or factual challenge, a court must determine whether the motion disputes the complaint's allegations regarding subject matter jurisdiction. Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162 n.8 (1st Cir. 2007). If the 12(b)(1) motion does not dispute subject matter allegations, then it challenges only the facial sufficiency of the complaint. Id. If the 12(b)(1) motion disputes the subject matter allegations, then it challenges the factual basis for subject matter jurisdiction. Id.

Under a facial challenge, the moving party challenges jurisdiction based on the allegations in the complaint. See Valentín, 254 F.3d at 363; Mercado Arocho, 455 F. Supp. 2d at 18; Rivera de León, 283 F. Supp. 2d at 554. Thus, "the court must consider all the allegations in the complaint as true, and will not look beyond the face of the complaint to determine jurisdiction." Mercado

Arocho, 455 F. Supp. 2d at 18. A facial attack only requires a court to examine the complaint and determine whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction." Torres-Negrón, 504 F.3d at 162 (quoting Scarfo v. Ginsburg, 175 F.3d 957, 960 (11th Cir. 1999)); see, e.g., Fina Air Inc., 555 F. Supp. 2d at 325–28 (examining a facial attack and applying the standard articulated in Torres-Negrón).

Under a factual challenge, "the allegations have no presumptive truthfulness, and the court . . . has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Mercado Arocho, 455 F. Supp. 2d at 18 (citations omitted) (quoting Reynolds v. Nelson, Civ. No. 05-3470-PHX-ROS, 2006 WL 2404364, at *1 (D. Ariz. July 17, 2006)). The analysis changes depending on whether the challenged facts would also decide issues relating to the merits of the case. Torres-Negrón, 504 F.3d at 163. If the challenged facts do involve the merits of the case, the court must use a summary judgment standard and dismiss "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Id. (quoting Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)). If the challenged facts do not involve the merits of the case, then the court is free to consider evidence and decide the question of its subject matter jurisdiction over the case. Id.

## II. FACTUAL ALLEGATIONS IN THE COMPLAINT

On November 16, 2016, Plaintiffs checked in with Southwest at the Luis Muñoz Marín International Airport in Puerto Rico. ECF No. 1, at 2. Because Mr. Tamayo required wheelchair assistance, Southwest directed that he be escorted through airport security by an agent of GMD, Southwest's wheelchair contractor. Id. at 2–3. An agent of GMD pushed Mr. Tamayo to security, where Mr. Tamayo was instructed to pass through without the wheelchair. Id. at 3. Mr. Tamayo

3

exited the wheelchair and passed through security. Id. GMD's agent met him on the other side with the wheelchair. Id. When Mr. Tamayo sat on the wheelchair, it locked out under his weight and cut part of his right pinky finger. Id. Plaintiffs allege that "Mr. Tamayo suffered bodily injury and resulting pain and suffering, disability, mental anguish, lost capacity for the enjoyment of life, the expense of hospitalization and medical care and treatment, aggravation of pre-existing injuries, lost wages, and impaired earning capacity. These losses are permanent and continuing in nature and [Mr. Tamayo] will suffer these losses in the future." Id. at 4. Plaintiffs also allege that "Mrs. Tamayo suffered intense mental anguish upon seeing her husband's finger amputated, and upon seeing his own suffering." Id. Plaintiffs seek $300,000 in damages. Id.

### III. FACTUAL ALLEGATIONS IN THE MOTION TO DISMISS

In the case at bar, Defendants have challenged the factual allegations of the complaint as to subject matter jurisdiction. ECF No. 40, at 2. Thus, the court may look beyond the face of the complaint and has discretion "to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts" to determine the existence of subject matter jurisdiction. Mercado Arocho, 455 F. Supp. 2d at 18.

In support of their motion to dismiss, Defendants directed the court's attention to Plaintiffs' depositions and Mr. Tamayo's medical records. The evidence revealed that a paramedic cleaned Mr. Tamayo's finger and applied Neosporin and a Band-Aid or bandage at the airport in Puerto Rico. ECF No. 40-1, at 32. Mr. Tamayo told the paramedic that he preferred to obtain medical treatment in Tampa. Id. He took Tylenol before his flight. Id. at 44. When he arrived at Memorial Hospital in Tampa, he stated that his pain level was zero and declined pain medication. Id. at 42, 45–46. Mr. Tamayo had follow-up visits to Memorial Hospital on November 23, 2016 and December 7, 2016. Id. at 48.

4

Memorial Hospital referred Mr. Tamayo to an orthopedic surgeon, Dr. Daniel Murphy. Id. at 46–47. Mr. Tamayo visited Dr. Murphy on five occasions: November 22, 2016, December 1, 2016, December 19, 2016, January 3, 2017, and January 31, 2017. ECF No. 40-2.

Mr. Tamayo's amputated fingertip has grown back, including his nail.[2] ECF No. 40-1, at 84–85. However, he does not have a fingerprint. Id. at 39. His finger is "tender" and "occasionally painful" and he does not have full sensation in it. Id.

## IV. LEGAL ANALYSIS

Generally, multiple plaintiffs cannot aggregate their claims to meet the amount in controversy. CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014). There is an exception to this rule in cases where several plaintiffs seek to enforce a single title or right, in which they have a "common and undivided interest." Id. (quoting Troy Bank of Troy, Indiana v. G.A. Whitehead & Co., 222 U.S. 39, 40–41 (1911)). "[I]ndividually cognizable and calculable claims" do not meet this definition. Id. at 44.

Turning to the case at bar, Plaintiffs' claims are individually cognizable and calculable because even though their alleged injuries resulted from the same event, they must be proven separately. See Rodríguez v. P.L. Indus., Inc., 53 F. Supp. 2d 538, 541 (D.P.R. 1999) ("Plaintiffs' argument that their claims must be aggregated because their independent claims result from a single act by Defendant is not compelling."). Thus, Plaintiffs' claims cannot be aggregated to meet the $75,000 amount in controversy requirement. This leaves two possible scenarios in which the court might exercise diversity jurisdiction over Plaintiffs' claims. First, the claims might exceed the amount in controversy individually. Second, if one of the claims cannot exceed the amount in controversy, the court could exercise supplemental jurisdiction over that claim. Exxon

---

[2] Mr. Tamayo stated that it took two to three months for his finger to "heal" and for his nail to begin growing back. ECF No. 40-1, at 59–60.

Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) (holding that as long as one party in a diversity jurisdiction action alleges a sufficient amount in controversy, the court may exert jurisdiction over other parties in the case even when those parties' own allegations are insufficient to meet the amount in controversy).

Here, Ms. Tamayo's claim for "intense mental anguish" does not exceed the $75,000 amount in controversy requirement. ECF No. 1, at 4. In Rosario Ortega v. Star-Kist Foods, Inc., 370 F.3d 124, 129 (1st Cir. 2004) (reversed on other grounds), the First Circuit held that the emotional distress claims of family members of an injured girl could not meet the $75,000 amount in controversy requirement. Factors the First Circuit examined included whether the family members believed the girl would die of her injury, whether there was a "dramatic witnessing of the accident," whether the accident strained the family members' relationship with the girl, whether the family members missed any work or school obligations to take the girl to medical appointments, whether the family members received any counseling services in connection with the girl's injury, and whether the family members lived with the girl. Id. Here, Ms. Tamayo did not witness the accident. ECF No. 40-3, at 8. Further, Plaintiffs did not plead and have not cited to any evidence indicating that Ms. Tamayo believed that Mr. Tamayo would die, that the accident strained her relationship with Mr. Tamayo, that she missed any obligations to take Mr. Tamayo to medical appointments, or that she ever received psychological or psychiatric treatment for emotional damages in connection with the accident. Thus, the only claim remaining that might exceed the $75,000 amount in controversy requirement is that of Mr. Tamayo.

An examination of relevant precedent reveals that in cases where claims for lost fingertips or fingers exceeded the amount in controversy, the plaintiffs suffered some combination of extensive medical damages, such as hospitalization or surgery, acute sensitivity or constant pain,

anxiety or depression, difficulty engaging in everyday activities, an inability to work, diminished capacity for holding and grasping objects, scarring, and a need for future medical care.[3] See Phav v. Trueblood, Inc., 915 F.2d 764 (1st Cir. 1990) ($370,000 award for loss of long and index fingertips where 1) the plaintiff was hospitalized for three days, 2) the stubs of his fingers were still acutely sensitive and bent backwards, 3) he could no longer play sports or instruments, 4) he considered the injury to be a social stigma, and 5) he was out of work for almost two years and was at times unable to work when he did obtain a job); Villalba v. Rockford Sys., Inc., No. 02-CV-4455 (ARR) (RML), 2006 WL 526660 (E.D.N.Y. Mar. 3, 2006) ($305,000 award for loss of top portions of two fingers where the plaintiff 1) had surgery, 2) experienced constant pain in his hand, 3) suffered from anxiety and depression, 3) had been unable to work since the accident, 4) had difficulty engaging in everyday activities, and 5) had diminished capacity for holding and grasping objects); Podgurski v. Town of N. Hempstead, 824 F. Supp. 2d 358 (E.D.N.Y. 2011) ($147,500 award for crushing of middle finger where 1) the plaintiff had constant pain when he moved the finger, which woke him up at night, 2) he got cramps up his arm, 3) the injury was treated by surgery, 4) there was a significant decrease in sensation and strength in the finger, which affected the overall grip and strength of the hand, 5) there was scarring, and 6) the plaintiff would require treatment with occupational therapy, medication, a steroid shot, and surgery).

Mr. Tamayo's only evidence of damages includes treatment by paramedics, two follow-up visits to Memorial Hospital, five visits to Dr. Murphy, lack of a fingerprint, "occasional" pain in his finger, and lack of full sensation in his finger. Plaintiffs have cited to no evidence indicating

---

[3] It is unclear whether the plaintiff in Podgurski v. Town of N. Hempstead, 824 F. Supp. 2d 358 (E.D.N.Y. 2011) lost the tip of his middle finger or the entire finger. If the plaintiff lost the entire finger, there is yet another reason to distinguish this case from the one presently before the court. Cases in which the plaintiff lost an entire finger, such as Heddinger v. Ashford Mem'l Cmty. Hosp., 734 F.2d 81 (1st Cir. 1984), are inapposite. On that note, it is also worth emphasizing that the plaintiffs in Phav v. Trueblood, Inc., 915 F.2d 764 (1st Cir. 1990) and Villalba v. Rockford Sys., Inc., No. 02-CV-4455 (ARR) (RML), 2006 WL 526660 (E.D.N.Y. Mar. 3, 2006) lost two fingertips, rather than just one, which further differentiates these cases from the case at bar.

that Mr. Tamayo was hospitalized or underwent surgery, experiences constant rather than occasional pain, is anxious or depressed, has difficulty engaging in everyday activities, was or is unable to work, has diminished capacity for holding and grasping objects, or needs future medical care. Under these circumstances, the amount in controversy cannot exceed $75,000. See Tucker v. Exxon Mobil Corp., No. CIV.A. 14-277-JJB, 2015 WL 105894 (M.D. La. Jan. 7, 2015) (finding that the amount in controversy was not met where the plaintiff lost part of *one* finger).

It is not merely a dearth of evidence, however, that dooms Mr. Tamayo's ability to meet the amount in controversy. Mr. Tamayo's deposition and his medical records also cast doubt on the extent of his damages alleged in the complaint. As to Mr. Tamayo's emotional state, according to his medical records, on December 1, 2016, Mr. Tamayo was "doing well" and had "no complaints." ECF No. 40-2, at 8. On December 19, 2016, Mr. Tamayo had "normal mood and affect and [wa]s well groomed with good eye contact." Id. at 6. As to his ability to engage in everyday activities and to work, Mr. Tamayo specifically stated that his finger does not restrict him, unless he wants to scratch his ear. ECF No. 40-1, at 40. As to the physical appearance of his fingertip, though he does not have a fingerprint, Mr. Tamayo specifically stated that this is "no problem." Id.

Indeed, after the motion for reconsideration was filed, the court ordered Plaintiffs to provide specific evidence that Mr. Tamayo: 1) had to undergo surgery or physical therapy regarding his finger, 2) suffered permanent damage to or impairment in his finger, and 3) received a prognosis made by a physician indicating that the condition of his finger could deteriorate in the future. ECF No. 46. In their response in opposition, Plaintiffs stated that "it is inapposite to discuss the need for surgery or physical therapy; permanency; or future deterioration." ECF No. 47, at 12. Plaintiffs' position is that the loss of Mr. Tamayo's fingertip alone, without any of the

8

circumstances surrounding the relevant cases, suffices to meet the amount in controversy. Unfortunately for Plaintiffs, the law is not on their side.

V. CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration (ECF No. 44) is GRANTED. The complaint is hereby DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of June, 2019.

s/Marcos E. López<br>U.S. Magistrate Judge